**Walter Fonseca**, OSB # 136349
**Eric T. Dahlin,** OSB #945439
wfonseca@oregonlawcenter.org
edahlin@oregonlawcenter.org
**OREGON LAW CENTER**
424 NW Sixth Street, Suite 102
Grants Pass, OR 97528
Phone (541) 476-2154
Fax (541) 476-4478

**Edward Johnson,** OSB # 965737
ejohnson@oregonlawcenter.org
**OREGON LAW CENTER**
522 SW Fifth Ave, Suite 812
Portland, OR 97204
Phone (503) 473-8310

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| **DEBRA BLAKE,** an individual, on behalf of herself and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> **CITY OF GRANTS PASS**, <br><br> Defendant. | Case No. <br><br> **CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** <br><br> **42 USC § 1983** |

## COMPLAINT

1.      The City of Grants Pass is trying to run homeless people out of town.  On any given day or night, hundreds of individuals in Grants Pass, Oregon are forced to live outside due to the lack of emergency shelter and affordable housing in their community.  The most recent "point in

1 – CLASS ACTION COMPLAINT

time" count in Josephine County found 654 individuals on the street and another 1011 individuals precariously housed for a total of 1754 people who are homeless or at immediate risk of homelessness.  These numbers have risen since that count in 2017.  This year, Grants Pass School District #7 reported 513 homeless youth enrolled in the District, the tenth most in the state.  Grants Pass has a severe affordable housing shortage and no emergency shelter for homeless people.  The people living outside in Grants Pass have nowhere else to go.  Like all people, they require a place to rest, sleep, stay warm, and stay alive.

2.      Over a period of years, the City of Grants Pass has taken coordinated steps to drive homeless people out of town.  The City has refused to allow warming stations in the winter (which are very cold), and cooling stations in the summer (which are very hot and increasingly smoky).  The City has removed park benches from its parks.   The City has paid one-way bus fare for homeless people to leave town.  The City has driven people to Jackson County.  One city councilor stated in a city council meeting, "the point is to make it uncomfortable enough for them [homeless people] in our city so they will want to move on down the road."  At the same time, city council has voted against affordable housing in the City and has failed to take steps to create a low-barrier emergency shelter for the hundreds of homeless people who live in the City.

3.      Grants Pass has a web of ordinances, customs, policies and practices that, in combination, criminalize the existence of homeless people in Grants Pass.  When people are found sleeping outside they are awakened by police, moved along, often ticketed, ordered to appear in court, criminally fined and prosecuted for "illegal sleeping," "illegal camping" and criminal trespass.  When people are sitting or resting in public spaces with a blanket or tarp for warmth, they are ticketed, fined and arrested for "illegal camping."  Grants Pass' customs, policies and practices, as applied to involuntarily homeless individuals, violate the constitutional rights to be free from

cruel and unusual punishment, to due process of law, and to equal protection of the laws, secured

by the Eighth and Fourteenth Amendments.  Plaintiffs seek prospective injunctive and

declaratory relief pursuant to 42 USC § 1983.  Debra Blake brings this action for herself and on

behalf of all similarly situated persons pursuant to Rule 23(b)(2) of the Federal Rules of Civil

Procedure.  Plaintiffs ask this court to enjoin defendants from taking law enforcement action

against plaintiffs for sleeping or simply existing in Grants Pass unless and until the City provides

a lawful place for people to rest, sleep and find shelter.

## I. JURISDICTION AND VENUE

4.      Jurisdiction exists for the claim pursuant to 28 USC §§ 1331 (federal question) and 1343

(civil rights) in that plaintiffs' claims arise under 42 USC § 1983. Venue is proper in the District

of Oregon pursuant to 28 USC § 1391(b)(2) because the City of Grants Pass is in this district and

the events giving rise to plaintiffs' claims occurred in this district.

## II. PARTIES

5.       Plaintiff Debra Blake is and was at all relevant times an involuntarily homeless resident

of Grants Pass, Oregon.

6.      Defendant City of Grants Pass is a municipal corporation duly organized and existing

under the laws of the State of Oregon.  The acts of defendant complained of were undertaken in

the execution of customs, policies, and practices implemented or consented to by authorized

policymakers of the City of Grants Pass.  The acts complained of were intentionally committed,

are ongoing, and will continue to be systematically committed unless restrained by this Court.

## III. FACTUAL ALLEGATIONS

### A.      Grants Pass' Affordable Housing Crisis and Lack of Emergency Shelter

7.      Grants Pass is in the midst of an affordable housing crisis.  There is not nearly enough

affordable housing to house all of the low-income residents of Grants Pass. In 2017, the Point-in-Time Count of homeless people in Josephine County found 654 individuals on the street and another 1011 individuals precariously housed for a total of 1754 people who are homeless or at immediate risk of homelessness. The majority of these people reside in Grants Pass, the county's largest city, and these numbers have increased since last year. The Grants Pass School District #7 currently has 531 homeless students enrolled.

8.      Unlike other comparably sized cities in Oregon, Grants Pass has no low-barrier emergency shelter for homeless individuals. There is no place in Grants Pass where people can simply show up and receive shelter during the day or night.

9.      The only shelters for adults in Grants Pass are run by the Gospel Rescue Mission. These shelters are nearly always full, they only allow people to stay for a limited duration, and they have many rules that exclude large numbers of people. There are no shelters at all for couples or for men with children.

10.     Stays at the Gospel Mission are limited to 30 days. The rules of the Mission run for several pages and include the following:

"If you have serious or chronic medical or mental issues that prevent you from participating in daily Mission life, you may not be able to stay at the Mission."

"Medications must be turned in at the front desk."

"You are to remain nicotine free during your stay at the Mission."

"There is no socializing between members of the opposite sex except at approved Mission events. Treat one another as a brother and/or sister. All intimate relationships other than legal/biblical marriage, regardless of gender, either on or off Mission property are strictly forbidden."

4 – CLASS ACTION COMPLAINT

"Taking a sick day will result in losing pass privileges for 72 hours and confinement to staying indoors during this time to insure a thorough recovery from illness."

"Every Sunday, you are required to attend a church approved by the Mission staff.  The individual church is your choice, however it must hold to traditional Christian teachings such as the Apostles Creed."

11.    Residents are not allowed to look for work during their 30 days at the Mission.

12.    Even if these shelters were lower-barrier, there would not be nearly enough beds to shelter all of the homeless people in Grants Pass.  In total, there are 30 beds in a dorm for single men, four bunk rooms for single women and twelve rooms for mothers with up to four children.

13.    The County in which Grants Pass is located, Josephine, has in recent months taken steps in a different direction than the City of Grants Pass.  Josephine County's Board of Commissioners declared a countywide affordable housing crisis in November of 2017.  The County took steps to legalize more nonconventional housing units and camping in some circumstances.  The Mayor of Grants Pass, Darin Fowler, publically expressed opposition to these measures.

14.    Grants Pass has no Public Housing and the wait list for a Section 8 voucher is long.  If a person is lucky enough to get a voucher in Josephine County there is only a 22% utilization rate.  In short, it is hard to get a housing voucher and if a person gets one, there are very few places to use it.

**B.    Plaintiff Debra Blake**

15.    Plaintiff Debra Blake is involuntarily homeless and has been so for the past seven years.  She has lived in Grants Pass for 14 years.  About seven years ago, she lost her job and her housing and has been forced to live outside.

5 – CLASS ACTION COMPLAINT

16.     Ms. Blake cannot afford housing and there is no available bed for her at an emergency shelter anywhere in Grants Pass.

17.     Ms. Blake, over the past seven years has been repeatedly told by Grants Pass police that she must "move along" and that there is nowhere in Grants Pass that she can legally sit or rest. She has been repeatedly awakened by Grants Pass police while sleeping and told that she needs to get up and move.  She has been told by Grants Pass police that she should leave town.

18.     Because she has no choice but to live outside and has no place else to go, Ms. Blake has faced ticketing, fines and criminal prosecution.

19.     On July 1, 2014, at 6:20 a.m., Ms. Blake was cited for violating GPMC 5.61.020 for sleeping in an alley at 620 SE J Street in Grants Pass and was fined $35.  Ms. Blake is unable to pay this fine, which because of late fees is now $109.

20.     On September 24, 2014 at 3:26 a.m., Ms. Blake was cited for violating GPMC 5.61.030 for "prohibited camping" while sleeping at 311SE G Street in Grants Pass and was fined $295. Ms. Blake is unable to pay this fine, which because of late fees is now $503.

21.     On October 4, 2014, Ms. Blake was cited for violating GPMC 5.61.030 for "prohibited camping" while sleeping at 431 NE D Street in Grants Pass and was fined $295.  Ms. Blake is unable to pay this fine, which because of late fees is now $503.

22.     On October 28, 2015, Ms. Blake was sleeping at 1555 NE A Street in Grants Pass and was arrested and charged with Criminal Trespass in the First Degree, under ORS 164.255, a Class A Misdemeanor.  Ms. Blake was convicted, fined $200 and placed on bench probation for 24 months.  Ms. Blake is unable to pay this fine which because of late fees is now $416.

23.     On May 1, 2016, Ms. Blake was sleeping on private property located at 201 NE 8th Street in Grants Pass and was arrested and charged with Criminal Trespass in the Second Degree under

6 – CLASS ACTION COMPLAINT

ORS 164.245, a Class C Misdemeanor. She was convicted, fined $200 and placed on bench probation for six months. Ms. Blake is unable to pay this fine which because of late fees is now $416.

24.     On July 17, 2018, Ms. Blake was sleeping in Riverside Park in Grants Pass at 7:33 a.m. She was approached by a Grants Pass police officer and issued a citation for violating GPMC 6.46.090 "Camping in Park" a violation that has a presumptive fine of $295. On July 24, 2018, Ms. Blake was again in Riverside Park. She was arrested, taken into custody, cited for Criminal Trespass II, incarcerated and spent the night in jail before being released the next morning. Her release agreement contains the provision that Ms. Blake is to "have no contact with All Grants Pass Parks." The Criminal Trespass II citation has yet to be charged. She was found guilty of the "Camping in Park" offense and her fine for this offense is now $410.

25.     Ms. Blake now owes the City of Grants Pass more than $4000 in fines for crimes and violations related directly to her involuntary homelessness and the fact that there is no affordable housing or emergency shelter in Grants Pass where Ms. Blake can stay.

26.     Ms. Blake continues to live without shelter in Grants Pass. At any time, she could be arrested, ticketed and prosecuted for sleeping outside or for covering herself with a blanket to stay warm. She has no place else to go.

**C.      Grants Pass' Efforts to Run Homeless People Out of Town**

27.     On a daily and nightly basis hundreds of homeless people living in Grants Pass are in the identical situation as Ms. Blake. They are awakened by officers of the Grants Pass Public Safety Department. They are moved along. They are told that they cannot sleep outside. They are frequently ticketed, fined, prosecuted and jailed for existing outside in Grants Pass.

28.     The City of Grants Pass has taken other affirmative and intentional steps to remove

7 – CLASS ACTION COMPLAINT

homeless people from its borders.  The City has removed park benches from its parks so that people have no place in public to rest.  The City has built fences around bus stop benches.  City police have offered to pay one-way bus fare to get homeless people out of town.

29.    The City has made it impossible for any organization to operate a warming or cooling center for homeless people anywhere within the City.

30.    The Grants Pass City Council has voted against affordable housing projects being allowed in the City, sometimes citing non-existent problems, like lack of parking, to explain their votes against affordable housing.

31.    Elected officials have publically stated their desire to drive homeless people from the City and to make it difficult for homeless people to live in Grants Pass.

32.    Counsel for plaintiffs reviewed dozens of anti-camping and anti-sleeping citations produced to them by Defendants pursuant to a public records request.  These tickets were issued between January of 2015 and May of 2017.  Of the 208 tickets received and reviewed, almost all of them were issued to people who were homeless at the time of issuance.  These tickets show that these ordinances are selectively enforced against homeless individuals.  Also, the tickets were usually issued based on officer initiated patrols, not based upon complaints from the public.  Of the 83 camping tickets issued pursuant to GPMC 5.61.030, 67 were officer initiated.  Of the 125 sleeping tickets issued pursuant to GPMC 5.61.020, 93 of them were officer initiated.

**D.    Relevant Ordinances**

33.     City of Grants Pass Municipal Code 5.61.010-030 "Prohibited Camping" provides, in part:

> **5.61.010 Definitions. Unless the context requires otherwise the following definitions apply to Chapter 5.61.**
> A. "To Camp" means to set up or to remain in or at a campsite.

8 – CLASS ACTION COMPLAINT

B. "Campsite" means any place where bedding, sleeping bag, or other material used for bedding purposes, or any stove or fire is placed, established, or maintained for the purpose of maintaining a temporary place to live, whether or not such place incorporates the use of any tent, lean-to, shack, or any other structure, or any vehicle or part thereof.

**5.61.020 Sleeping on Sidewalks, Streets, Alleys, or Within Doorways Prohibited**

A. No person may sleep on public sidewalks, streets, or alleyways at any time as a matter of individual and public safety.

B. No person may sleep in any pedestrian or vehicular entrance to public or private property abutting a public sidewalk.

C. In addition to any other remedy provided by law, any person found in violation of this section may be immediately removed from the premises.

**5.61.030 Camping Prohibited**

No person may occupy a campsite in or upon any sidewalk, street, alley, lane, public right of way, park, bench, or any other publicly-owned property or under any bridge or viaduct,

34.     The City of Grants Pass Municipal Code 6.46.090, "Camping in Parks" provides,

**6.46.090 Camping in Parks**

A. It is unlawful for any person to camp within the boundaries of a City Park.  For the purposes of this section, camping shall mean sleeping or erecting sleeping quarters or living quarters.

## IV. Class Allegations

35.     Debra Blake brings this action on behalf of herself and all others similarly situated under Rule 23 of the Federal Rules of Civil Procedure.  She seeks to represent a class that consists of: all involuntarily homeless people living in Grants Pass, Oregon.

36.     The Class is so numerous that joinder of its members is impracticable.  The latest point-in-time count for Josephine County indicates that the class numbers, at a minimum, in the hundreds.  In addition to the hundreds of homeless adults, there are 531 homeless youth enrolled in school in Grants Pass.

37.     The relief sought is common to all members of the proposed class, and common questions of law and fact exist as to all members of the class.  Plaintiffs seek prospective relief

from enforcement of Grants Pass' anti-camping ordinances, Grants Pass' anti-sleeping ordinance and Criminal Trespass laws when they are enforced against members of the class solely because they have no place else to go.

38.    There is a well-defined community of interest in the questions of law and fact affecting the class as a whole.  The questions of law and fact common to the class predominate over any questions affecting solely individual members of the action, and include:

      a.    Are emergency shelter beds available to all homeless individuals in Grants Pass?

      b.    Are there other places where involuntarily homeless people can go in Grants Pass?

      c.    Are resting, sleeping and sheltering oneself unavoidable basic human needs?

      d.    Does the City of Grants Pass's enforcement of the anti-sleeping ordinance, the anti-camping ordinances and criminal trespass laws violate plaintiffs' rights to equal protection and due process under the Fourteenth Amendment to the United States Constitution?

      e.    Does the City of Grants Pass's enforcement of the anti-sleeping ordinance, the anti-camping ordinances and criminal trespass laws violate plaintiffs' right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution? and

      f.    Is prospective relief appropriate to stop the City of Grants Pass from violating plaintiffs' rights?

39.    Debra Blake's claims are typical to the class.  Ms. Blake and the proposed class are homeless individuals who have been and are subject to the enforcement of the City's anti-camping ordinances, anti-sleeping ordinance and criminal trespass laws as well as the City's

10 – CLASS ACTION COMPLAINT

other policies and practices aimed at making homeless people in Grants Pass uncomfortable and driving them out of town.

40.     Ms. Blake will fairly and adequately protect the interests of the class. Plaintiffs have retained counsel competent and experienced in class action litigation.

41.     A class action is the appropriate and superior method for the fair and efficient adjudication of this controversy. Prosecuting separate actions would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for the City of Grants Pass. Allowing this lawsuit to proceed as a class action will permit the class of similarly situated persons to prosecute their common claims in a single forum simultaneously and efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would entail.

42.     To the extent that any member of the class could afford individual litigation, it would be unduly burdensome to the judicial system. Concentrating this litigation in one forum will promote judicial economy, consistency, and parity among the claims of individual members of the class.

43.     Plaintiffs know of no difficulty which would be encountered in the management of this litigation that would preclude its maintenance as a class action.

## V. Plaintiffs Attempted to Resolve this Matter Prior to Litigation

44.     Plaintiffs' counsel contacted the City of Grants Pass on September 10, 2018 to demand relief as outlined in this complaint.

45.     Despite these efforts, the parties have not been able to resolve their dispute.

## FIRST CLAIM FOR RELIEF
### Eighth Amendment to the U.S. Constitution (Cruel and Unusual Punishment) and 42 U.S.C. § 1983

46.     Plaintiffs incorporate by reference the allegations above as if fully set forth herein.

47.     Unsheltered homeless people in Grants Pass are involuntarily homeless in public.  They have no place else to go.

48.     Resting, sleeping and seeking shelter is not voluntary conduct.  They are basic and harmless human needs.  Performing these acts in public is integral to the status of being homeless in Grants Pass.

49.     By punishing the acts of resting, sleeping or seeking shelter in public, without providing any legal place for most homeless place to conduct such activities, Grants Pass effectively punishes the status of homelessness.

50.     As applied to the homeless individuals, the City's enforcement of the anti-sleeping ordinance, the anti-camping ordinances and criminal trespass laws violates the 8th Amendment proscription of cruel and unusual punishment by harming plaintiffs with sanctions for engaging in innocent, involuntary, life-sustaining activity, thus effectively criminalizing their homeless status.

51.     In the absence of prospective injunctive relief, plaintiffs and prospective class members will be subject to the real threat of being ticketed, arrested, fined and jailed in violation of their right against cruel and unusual punishment.

52.     Plaintiffs are entitled to injunctive and declaratory relief, as set forth below.

53.     Plaintiffs are entitled to their reasonable costs and attorney fees on this claim pursuant to 42 U.S.C. § 1988.

12 – CLASS ACTION COMPLAINT

## SECOND  CLAIM FOR RELIEF:
### Fourteenth Amendment to the U.S. Constitution (Equal Protection) and 42 U.S.C. § 1983

54.     Plaintiffs incorporate by reference the allegations above as if fully set forth herein.

55.     Defendants selectively enforce the anti-sleeping ordinance, the anti-camping ordinances and criminal trespass laws against individuals like Ms. Blake pursuant to a discriminatory purpose to rid the City of Grants Pass of homeless individuals.

56.     Ms. Blake and the class she seeks to represent have been told by Grants Pass police that there is no place where homeless people are allowed to be in Grants Pass.  The fundamental right of the plaintiffs to move about freely and engage in harmless life-sustaining activities such as resting,  sleeping and attempting to stay warm was and is infringed on by Defendant's conduct and enforcement of the camping ordinances, the sleeping ordinance and criminal trespass laws.

57.     Homelessness is an arbitrary classification that Defendant uses to accomplish the forbidden aim of ridding the City of Grants Pass of homeless persons through selective application of the above laws.

58.     Non-homeless people are not ticketed, fined, prosecuted and jailed for resting or sleeping in public.

59.     Defendant's selective enforcement of these laws violates the Equal Protection clause of the 14th Amendment of the U.S. Constitution.

60.     Plaintiffs are entitled to injunctive and declaratory relief, as set forth below.

61.     Plaintiffs are entitled to their reasonable costs and attorney fees on this claim pursuant to 42 U.S.C. § 1988.

## THIRD  CLAIM FOR RELIEF:
### Fourteenth Amendment to the U.S. Constitution (Substantive Due Process) and 42 U.S.C. § 1983

62.    Plaintiffs incorporate by reference the allegations above as if fully set forth herein.

63.    The fundamental right of the individual plaintiffs to move about freely and engage in harmless life-sustaining activities such as resting,  sleeping and attempting to stay warm was and is infringed on by Defendant's conduct and enforcement of the camping ordinances, the sleeping ordinance and criminal trespass laws.

64.    Defendant's conduct violates the Due Process clause of the 14th Amendment to the U.S. Constitution.

65.    Plaintiffs are entitled to injunctive and declaratory relief, as set forth below.

66.    Plaintiffs are entitled to their reasonable costs and attorney fees on this claim pursuant to 42 U.S.C. § 1988.

## FOURTH  CLAIM FOR RELIEF:
### Fourteenth Amendment to the U.S. Constitution (Procedural Due Process/Notice) and 42 U.S.C. § 1983

67.    Plaintiffs incorporate by reference the allegations above as if fully set forth herein.

68.    The City of Grants Pass' two anti-camping ordinances do not provide constitutionally sufficient notice such that a reasonable homeless person in Grants Pass would understand what conduct is prohibited.

69.    Plaintiffs have not been given meaningful notice prior to being deprived of the liberty interests in moving freely through Grants Pass, resting, sleeping and seeking shelter from the elements.

70.    Plaintiffs are entitled to their reasonable costs and attorney fees on this claim pursuant to

42 U.S.C. § 1988.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ask the Court for the following relief:

1.    To certify the class as defined above at ¶ 42;

2.    To declare Grants Pass' campaign to drive homeless people out of the City

unconstitutional and enjoin such practices, policies and customs;

3.    To issue a declaration that, as applied to plaintiffs, enforcement of GPMC 5.61.020 (the

anti-sleeping ordinance), GPMC 5.61.030 (the anti-camping ordinance), GPMC 6.46.090 (the

parks anti-camping ordinance) and criminal trespass laws is an unconstitutional infringement on

plaintiffs' Eighth and Fourteenth Amendment rights.

4.    To issue an injunction prohibiting Grants Pass from enforcement of GPMC 5.61.020 (the

anti-sleeping ordinance), GPMC 5.61.030 (the anti-camping ordinance), GPMC 6.46.090 (the

parks anti-camping ordinance) and criminal trespass laws against homeless individuals in Grants

Pass who are engaged in the life sustaining activities of resting, sleeping or seeking shelter from

the elements, unless and until Grants Pass provides a place where plaintiffs can lawfully engage

in necessary life-sustaining activities.

5.    To award Plaintiffs their costs and attorney fees, pursuant to 42 U.S.C. § 1988

6.    To award Plaintiffs such other relief as may be just and equitable.

Respectfully submitted, this 15th day of October, 2018.

/s/ Edward Johnson
Walter Fonseca, OSB #136349
Eric Dahlin, OSB #945439
Edward Johnson, OSB #965737
(541) 476-2154

15 – CLASS ACTION COMPLAINT