IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

DEBRA BLAKE, GLORIA JOHNSON,
JOHN LOGAN, individuals, on behalf of
themselves and all others similarly situated,

          Plaintiffs,

     v.

CITY OF GRANTS PASS,

          Defendant.

Case No. 1:18-cv-01823-CL

OPINION AND ORDER

_____

CLARKE, Magistrate Judge.

This case comes before the Court on Plaintiffs' Motion for Class Certification (#25) pursuant to Fed. R. Civ. P. 23. For the reasons below, Plaintiffs' motion is GRANTED.[1]

_____

[1] The parties have consented to Magistrate Judge jurisdiction over this action pursuant to 28 U.S.C. § 636(c)(1).

## BACKGROUND

Plaintiffs are three allegedly homeless individuals in the City of Grants Pass. As alleged, plaintiff Debra Blake has been homeless in Grants Pass for about eight to ten years. Blake Supp. Decl. ¶ 3 (#26). Although she currently lives in temporary transitional housing, she is beyond her ninety-day stay and faces the imminent possibility of returning to the streets. Blake Supp. Decl. ¶¶ 2-3 (#43). Plaintiff John Logan alleges he has been intermittently homeless for the past ten years. Logan Supp. Decl. ¶¶ 4-6 (#28). Currently, he works as an in-home care provider, and his clients let him sleep on a mattress in their storage room approximately four or five nights a week. Logan Supp. Decl. ¶¶ 3-6 (#44). He has no legal right to stay at his clients' homes, and he spends the remaining nights sleeping in his car at a rest stop north of town. *Id.* Plaintiff Gloria Johnson allegedly lives full-time in her van. Johnson Supp. Decl. ¶ 5 (#27).

Plaintiffs allege that each of their situations fall under the definition of homelessness adopted by the United States Department of Housing and Urban Development ("HUD"). 24 C.F.R § 582.5 (2012). HUD's definition encompasses a variety of living situations, including youth homelessness, *id.* § 582.5(3); individuals fleeing domestic violence, *id.* § 582.5(4); individuals "living in a supervised publicly or privately operated shelter designed to provide temporary living arrangements," *id.* § 582.5(1)(ii); and individuals whose primary nighttime residence "is a public or private place not designed for or ordinarily used as a regular sleeping accommodation for human beings, including a car, park, abandoned building, bus or train station, or camping ground, *id.* § 582.5(1)(i). Plaintiffs allege that their situations are just three representations of modern homelessness in the United States. While their exact circumstances and stories may vary, they all share the need to conduct the life sustaining activities of resting, sleeping, and seeking shelter from the elements while living in Grants Pass without a permanent home.

Plaintiffs allege that Defendant, through a combination of ordinances, customs, and policies, has unconstitutionally punished them for conducting these life-sustaining activities and criminalized their existence in Grants Pass. Plf. Mot. for Class Cert. at 8 (#25). They seek prospective declaratory and injunctive relief from enforcement of the following ordinances in the City of Grants Pass Municipal Code:

### 5.61.010 Definitions

A. "To Camp" means to set up or to remain in or at a campsite.

B. "Campsite" means any place where bedding, sleeping bag, or other material used for bedding purposes, or any stove or fire is placed, established, or maintained for the purpose of maintaining a temporary place to live, whether or not such place incorporates the use of any tent, lean-to, shack, or any other structure, or any vehicle or part thereof.

### 5.61.020 Sleeping on Sidewalks, Streets, Alleys, or Within Doorways Prohibited

A. No person may sleep on public sidewalks, streets, or alleyways at any time as a matter of individual and public safety.

B. No person may sleep in any pedestrian or vehicular entrance to public or private property abutting a public sidewalk.

C. In addition to any other remedy provided by law, any person found in violation of this section may be immediately removed from the premises.

### 5.61.030 Camping Prohibited

No person may occupy a campsite in or upon any sidewalk, street, alley, lane, public right of way, park, bench, or any other publicly-owned property or under any bridge or viaduct . . . .

### 6.46.090 Camping in Parks

A. It is unlawful for any person to camp, as defined in GPMC Title 5, within the boundaries of the City parks.

B. Overnight parking of vehicles shall be unlawful. For the purposes of this section, anyone who parks or leaves a vehicle parked for two consecutive hours or who remains within one of the parks as herein defined for purposes of camping as defined in this section for two consecutive hours, without permission from the City Council, between the hours of midnight and 6:00am shall be considered in violation of this Chapter.

Plaintiffs seek relief not only for themselves, but also on behalf of all involuntarily homeless persons in Grants Pass. To support their allegation that the class is numerous, Plaintiffs cite to a point in time count ("PIT Count") of the number of sheltered and unsheltered homeless persons in Josephine County. Plf. Mot. for Class Cert. at 16 (#25). The PIT Count is an annual count of homeless individuals on one night in January. Plf. Reply Br. at 19 (#41). HUD requires local homelessness assistance and prevention networks to conduct a PIT Count each year as a condition of federal funding. *Id.* In January 2019, a PIT Count conducted by the United Community Action Network ("UCAN") counted 602 currently homeless individuals in Grants Pass. Wessels Supp. Decl. ¶ 6 (#42). Another 1,045 individuals were "precariously housed," meaning that they were sleeping at the home of somebody else, i.e. "couch surfing." Wessels Supp. Decl. ¶ 6 (#42).

## STANDARD OF REVIEW

Plaintiffs seeking class certification must affirmatively demonstrate that the proposed class meets the four threshold requirements of Fed. R. Civ. P. 23(a) and at least one of the requirements of Fed. R. Civ. P. 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997). To satisfy Rule 23(a), the plaintiffs must show that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). To certify a class under Rule 23(b)(2), as Plaintiffs seek here, the plaintiffs must also show that the defendant "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

Plaintiffs bear the burden of demonstrating that each element of Rule 23 is satisfied.

*Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). While the primary focus is not

on the merits of the plaintiffs' claims, the Court must conduct a "rigorous" analysis and conclude

that each of the four requirements of Rule 23(a) has been affirmatively shown with facts before

certification can occur. *Falcon*, 457 U.S. 147 (1982); *Comcast v. Behrend*, 133 S.Ct. 1426

(2013); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-351 (2011) ("Rule 23 does not set

forth a mere pleading standard...[the party seeking certification must instead] prove that there

are in fact sufficiently numerous parties, common questions of law or fact, etc."). However, the

Court need only consider the complaint and "material sufficient to form a reasonable judgment

on each [Rule 23(a)] requirement . . . ." *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975).

Holding plaintiffs to the evidentiary standards that will apply at trial risks terminating important

class actions before a putative class may gather crucial admissible evidence. *Sali v. Corona Reg'l*

*Med. Ctr.*, 889 F.3d 623, 633 (9th Cir. 2018).

## DISCUSSION

Plaintiffs, on behalf of themselves and others similarly situated, allege that Defendant has

implemented a web of ordinances, customs, policies, and practices that, in combination,

criminalize the existence of homeless people. Plaintiffs seek prospective declaratory and

injunctive relief from "enforcement of GPMC 5.61.020 (the anti-sleeping ordinance), GPMC

5.61.030 (the anti-camping ordinance), GPMC 6.46.090 (the parks anti-camping ordinance), and

criminal trespass laws, as well as move-along orders issued by police against homeless

individuals in Grants Pass who are engaged in the life sustaining activities of resting, sleeping, or

seeking shelter from the elements, unless and until the City provides a place where plaintiffs can

lawfully engage in necessary life-sustaining activities." Plf.'s Motion for Class Cert. at 12 (#25).

Plaintiffs propose the following class definition for certification:

> All involuntarily homeless individuals living in Grants Pass,
> Oregon, including homeless individuals who sometimes sleep

outside city limits to avoid harassment and punishment by Defendant as addressed in this lawsuit.

For the following reasons, Plaintiffs' Motion for Class Certification (#25) is granted, and the proposed class definition is adopted.

## A.  Plaintiffs meet the standards for certification under Rule 23(a).

### i.      Numerosity

Federal Rule of Civil Procedure 23(a)(1) requires a showing that the class is so numerous that joinder of all members is impracticable. Not all class members need be identified, and a specific threshold number of class members is not required. *See Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 329 (1980); *see also Freedman v. Louisiana-Pacific Corp.*, 922 F. Supp. 377, 398 (D. Or. 1996). Rather, courts must examine the "specific facts of each case" to determine whether the numerosity requirement has been satisfied. *Gen. Tel. Co.*, 446 U.S. at 329. Where plaintiffs seek only injunctive and declaratory relief, the numerosity requirement is relaxed. *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1203 (N.D. Cal. 2017). Under the relaxed requirement, "plaintiffs may rely on reasonable inferences arising from plaintiffs' other evidence that the number of unknown and future members is sufficient to make joinder impracticable." *Id.* Similarly, "a court may draw reasonable inferences from the facts before it." *Lynch v. Rank*, 604 F. Supp. 30, 36 (N.D. Cal. 1984).

Plaintiffs ask the Court to certify a class of all involuntarily homeless people living in Grants Pass. This Court finds the proposed class numerous. The PIT Count data presented by Plaintiffs indicates that the proposed class contains at least 600 individuals. Moreover, the Ninth Circuit recently recognized that a single PIT Count "will undercount the homeless population." *Martin v. Boise*, 920, F.3d 584, 602 (9th Cir. 2019) (internal quotations omitted). The 2019 PIT Count, therefore, may be a conservative estimate of the number of homeless individuals in Grants Pass. Thus, under the relaxed numerosity requirement, Plaintiffs have presented sufficient

facts to allow this Court to reasonably infer that joinder of all members of the proposed class is impracticable.

### ii. Commonality

Commonality requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Common questions "must be of such a nature that it is capable of class-wide resolution—which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Wal-Mart*, 564 U.S at 350. The mere existence of common questions alone will not meet the commonality requirement. *See id.* at 349. Instead, "[w]hat matters to class certification . . . is . . . the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (emphasis in original). Under the commonality analysis, "[p]laintiffs need not show that every question in the case, or even a preponderance of questions, is capable of classwide resolution. So long as there is 'even a single common question,' a would-be class can satisfy the commonality requirement." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013) (quoting *Wal-Mart*, 564 U.S. at 359). Moreover, the requirement of commonality will be satisfied where "the lawsuit challenges a system-wide practice or policy that affects all of the putative members." *Dominguez v. Schwarzenegger*, 270 F.R.D. 477, 485 (N.D. Cal. 2010).

Plaintiffs' claims share the following central questions: (1) whether Defendant's custom, pattern, and practice of enforcing anti-camping ordinances, anti-sleeping ordinances, and criminal trespass laws, along with imposing associated fines and fees, against involuntarily homeless individuals violates the Eighth Amendment of the Constitution; (2) whether Defendant's selective enforcement of anti-camping ordinances, anti-sleeping ordinances, and criminal trespass laws violate the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution; (3) whether Defendant's conduct and enforcement of the anti-camping

7

ordinances, anti-sleeping ordinance, and criminal trespass laws violate Plaintiffs' fundamental right to move about freely and engage in harmless life-sustaining activities such as resting, sleeping, and attempting to stay warm, in violation of the Due Process clause of the Fourteenth Amendment to the U.S. Constitution; and (4) whether Defendant's two anti-camping ordinances provide constitutionally sufficient notice prior to depriving Plaintiffs of their liberty interests in resting, sleeping, and seeking shelter from the elements, such that a reasonable homeless person in Grants Pass would understand what conduct is prohibited.

These common questions challenge a city-wide practice of enforcing anti-sleeping ordinances, anti-camping ordinances, and criminal trespass laws that affect all the putative class members. Between January of 2015 and May of 2017, the Grants Pass Police Department allegedly issued 208 anti-sleeping and anti-camping citations, primarily to homeless individuals. Second Am. Compl. ¶ 49 (#23). Nothing in the record indicates that Defendant intends to alter, cease, or depart from its practice of enforcement. Therefore, because this lawsuit challenges a system-wide practice of enforcement that affects all putative class members, and a classwide proceeding can generate common answers to the aforementioned common questions to achieve a classwide resolution, Plaintiffs have met the commonality requirement.

### iii.    Typicality

Typicality requires that Plaintiffs establish that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). "The test of typicality is whether other members have the same or similar

injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.*

Under HUD's definition, an individual "who lacks a fixed, regular, and adequate nighttime residence" is homeless. 24 C.F.R § 582.5 (1). HUD further defines homelessness to include the following: (1) individuals with a primary nighttime residence that is "a public or private place not designed for or ordinarily used as a regular sleeping accommodation for human beings, including a car, park, . . . or camping ground," and (2) individuals who are living in "a supervised publicly or privately operated shelter designated to provide temporary living arrangements," including "congregate shelters, transitional housing, and hotels and motels paid for by charitable organizations or by federal, state, or local government programs for low-income individuals." 24 C.F.R § 582.5 (1) (i-ii) (2012).

The named Plaintiffs all fall under this definition of homelessness. Ms. Blake is living in a supervised transitional housing treatment program. Blake Supp. Decl. ¶¶ 2-4 (#26). She is beyond the ninety days that she was allotted to stay in this transitional housing, and she has been told by staff "to start looking for another place to live." Blake Supp. Decl. ¶ 3 (#43). She has no other place to live. Blake Supp. Decl. ¶ 4 (#43). Ms. Johnson lives in her van. Johnson Supp. Decl. ¶ 5 (#27). Mr. Logan sleeps in his truck two to three nights a week. Logan Supp. Decl. ¶¶ 4-6 (#44). The other nights, Mr. Logan's clients let him stay in their storeroom, a place where he has no legal right to stay that is designed for storage rather than sleep. Logan Supp. Decl. ¶¶ 4-6 (#44). Mr. Logan's clients may refuse him shelter whenever they do not want him to stay the night. Logan Supp. Decl. ¶¶ 4-6 (#44). Therefore, Plaintiffs are homeless under the definition provided by HUD.

As to the "involuntary" qualifier of the proposed class, the Ninth Circuit has defined involuntary homelessness as follows: a person is involuntarily homeless when "there is a greater number of homeless individuals in [a jurisdiction] than beds available [in shelters]." *Martin v. City of Boise*, 920 F.3d 584, 617 (2019). There are more homeless individuals than shelter beds in the City of Grants Pass. Wessels Supp. Decl. ¶ 12 (#29); Wessels Supp. Decl. ¶¶ 5-6 (#42). Currently, the only shelters for adult homeless individuals are run by the Gospel Rescue Mission. Second Am. Compl. ¶ 12 (#23). These shelters have a total of thirty beds in a dorm for single men, four bunk rooms for single women, and twelve rooms for mothers with up to four children. Second Am. Compl. ¶ 15 (#23). The PIT Count conducted by UCAN counted 602 currently homeless individuals in Grants Pass. Therefore, there are more homeless individuals than shelter beds in the City of Grants Pass, and Plaintiffs are involuntarily homeless based upon the definition provided by *Martin*.

Plaintiffs are not the only involuntary homeless individuals in the City of Grants Pass. Second Am. Compl. ¶ 9 (#23). Plaintiffs' risk for the alleged future harm is thus based on conduct that is not unique to the named Plaintiffs. All involuntary homeless people, including Plaintiffs, who engage in the conduct prohibited by the challenged ordinances, are at risk from the alleged future harm of criminalization, move-along orders, warnings, and fines. Blake Supp. Decl. ¶¶ 2-16 (#26); Johnson Supp. Decl. ¶¶ 2-14 (#27); Logan Supp. Decl. ¶¶ 2-11 (#28). This risk of future harm to the putative class is evidenced by the aforementioned 208 citations allegedly given out by the Grants Pass Police Department to homeless individuals. Second Am. Compl. ¶ 49 (#23). Therefore, the Court finds that Plaintiffs' claims are typical of the claims of the class.

### iv.    Adequacy of representation

Rule 23(a)(4) requires proposed class representatives to adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). This requirement is satisfied if (1) the named representatives appear able to prosecute the action vigorously through qualified counsel, and (2) the representatives do not have antagonistic or conflicting interests with the unnamed members of the class. *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). Implicit in this standard is the requirement that a proposed named plaintiff must herself be a member of the class she seeks to represent. *Sosna v. Iowa*, 419 U.S. 393, 403 (1975) ("named plaintiff in a class action must show that the threat of injury in a case such as this is real and immediate, not conjectural or hypothetical") (internal quotations omitted). The burden is on the defendant to show that representation will be inadequate. *See G.A. Enterprises, Inc. v. Leisure Living Communities, Inc.*, 517 F.2d 24, 26 n.3 (1st Cir. 1975) (standards for assessing adequacy of representation under Rule 23(a)(4) and Rule 23.1 are "essentially the same").

Defendant does not dispute that Plaintiffs and the proposed class are adequately represented by counsel, nor does it contend that the Plaintiffs have antagonistic or conflicting interests with unnamed members of this putative class. Instead, Defendant challenges the standing of each named plaintiff, claiming that Ms. Blake, Ms. Johnson, and Mr. Logan are not "involuntarily" homeless and thus have presented only a hypothetical threat of injury. Based on the facts alleged by Plaintiffs, this Court finds Defendant's attack unsupported and contrary to HUD's definition of homelessness.

Defendant challenges the standing of Ms. Blake, Ms. Johnson, and Mr. Logan by contending that "none of the named plaintiffs have any real or immediate risk of being exposed" to move-along orders or citations under the anti-sleeping, anti-camping, and parks anti-camping ordinances. Def. Resp. to Plf. Mot. for Class Cert. at 27 (#37). The crux of Defendant's challenge to Plaintiff's standing rests on a series of accusatory hypothetical questions by which

11

Defendant suggests that Plaintiffs have either voluntarily forgone the comforts of a private home or elected to sleep in areas where they knew citations were possible. Not only are these personal attacks on Plaintiffs' situations insensitive, they reveal that Defendant may misunderstand the nature of modern homelessness.

As discussed above, each of Plaintiffs' alleged situations falls under the definition of homelessness set forth by HUD. Ms. Blake is beyond her allotted stay in a transitional housing program and may soon be on the street again. Blake Supp. Decl. ¶¶ 2-4 (#43). Ms. Johnson and Mr. Logan have no permanent residence and regularly sleep in their vehicles. Johnson Supp. Decl. ¶ 5 (#27); Logan Supp. Decl. ¶¶ 4-6 (#44). Sleeping in a vehicle is considered "camping" under the ordinances at issue in this case. GPMC 5.61.010; GPMC 6.46.090. Given their situations, all three named plaintiffs face a real and imminent risk of being cited for sleeping or resting in streets, alleyways, parks, or other public areas of Grants Pass. Thus, Plaintiffs have standing to represent this class. Moreover, because Defendant does not otherwise allege that Plaintiffs have conflicting interests with the proposed class, this Court finds that Plaintiffs and their counsel are adequate representatives for the putative class.

## B. Plaintiffs meet the standard for certification under Rule 23(b)(2).

In addition to the prerequisites of Rule 23(a), Plaintiffs must also satisfy one section of Rule 23(b)(2) to obtain class certification. Where the relief requested is solely declaratory and injunctive, class certification is proper under Rule 23(b)(2) "when a single injunction or declaratory judgement would provide final relief to each member of the class." *Wal-Mart*, 564 U.S. at 360. Furthermore, in situations in which the defendant is alleged to have acted on grounds applicable to all class members, this Court has held that Rule 23(b)(2) certification is appropriate. *See, e.g., Lane v. Kitzhaber*, 283 F.R.D. 587, 600-02 (D. Or. 2012).

Plaintiffs' requested injunctive and declaratory relief would provide final relief to each member of the class. Each member of the proposed class is at risk of having the challenged

12

ordinances enforced against him or her. Thus, Defendant's alleged conduct—punishing homeless individuals for engaging in activities necessary to sustain life—applies equally to all class members. Furthermore, this Court is satisfied that a judgement in this case for either party will resolve the matter for all members of the class. Therefore, Plaintiffs meet the standard for certification under Rule 23(b)(2).

## ORDER

For the foregoing reasons, Plaintiffs' Motion for Class Certification (#25) is GRANTED.

IT IS SO ORDERED.

DATED this ___ day of August, 2019.

MARK D. CLARKE
United States Magistrate Judge